IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANIS PRISNEL,

      Petitioner,

v.                                        Civ. No. 26-761 JB/GBW

WARDEN, *Otero County
Processing Center*, *et al.*,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before me on Petitioner Anis Prisnel's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Petition) (*docs. 1*, *6*) and pursuant to the Order of Reference (*doc. 5*).  I RECOMMEND denying the Petition for the reasons explained below.

## I.    Background

Petitioner is a native and citizen of Haiti.  *Doc. 11-1*.  On July 31, 2024, he applied for admission at the San Ysidro Port of Entry, coming from Mexico.  *Id*.  An immigration officer determined that Petitioner was not a citizen or national of the United States and did not have admissible documents to enter the United States.  *Id*. at 2.  Petitioner was served with a Notice to Appear (NTA), Form I-862, charging him as inadmissible under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA).  *Doc. 11-2*; *see* 8 U.S.C. § 1182 (a)(7)(A)(i)(I).  The NTA provided notice of the time, date, and location of

his hearing, which was set for October 17, 2024.  *Id*. at 1.  Pending removal proceedings, Petitioner was paroled into the United States.  *Doc. 11-1* at 2.  At some time thereafter, Petitioner applied for asylum with U.S. Citizenship and Immigration Services (USCIS).  *Doc. 6* at 4.

On October 17, 2024, Petitioner failed to appear for his removal hearing and was ordered removed from the United States *in absentia*.  *Doc. 11-3*; *see* 8 U.S.C. § 1229a(b)(5)(A).  On December 2, 2024, the immigration court granted Petitioner's motion to reopen the proceedings.  *Doc. 11-4*.

On September 8, 2025, the immigration court granted the Department of Homeland Security's (DHS) motion to dismiss Petitioner's removal proceedings under 8 C.F.R. §§ 1239.2(c) and 239.2(a)(7).[1]  *Doc. 11-5*.  Petitioner was detained on the same day.  *Doc. 11* at 2; *doc. 12* at 1.  An appeal was filed on October 2, 2025,[2] and remains pending before the Board of Immigration Appeals (BIA).  *Doc. 11* at 2–3; *doc. 1* at 6.  Petitioner remains in DHS custody.

---

[1] The cited regulations authorize DHS to move for dismissal on the basis that "[c]ircumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government."  8 C.F.R. § 239.2(a)(7); *see also* 8 C.F.R. § 1239.2(c) ("After commencement of proceedings . . . government counsel or an officer enumerated in 8 C.F.R. § 239.1(a) may move for dismissal of the matter on the grounds set out under 8 C.F.R. § 239.2(a).").  Respondents represent that the purpose of the request for dismissal was to return Petitioner to expedited removal processing.  *Doc. 11* at 2 & n.1.

[2] Respondents represent that Petitioner filed the appeal to the BIA, *doc. 11* at 2–3, although they attach no documents establishing the date or pendency of the appeal.  Petitioner represents that DHS, not he, appealed the dismissal of the proceedings to the BIA.  *Doc. 1* at 6; *doc. 12* at 1.  On the record before the Court, it is implausible that Respondents appealed the dismissal, as they were the ones who requested it. But in any event, all parties agree that the appeal before the BIA remains pending.  Ultimately, whether Petitioner or Respondents filed the appeal is immaterial to the undersigned's recommendation.

## II.      Standard of Review

Section 2241 extends the writ of habeas corpus to individuals "in custody under or by color of the authority of the United States."  28 U.S.C. § 2241(c)(1).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).  While the statute does not expressly require exhaustion, courts have held that "[t]he exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief."  *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010).  "A narrow exception to the exhaustion requirement exists if a petitioner can demonstrate that exhaustion is futile."  *Id.* (citing *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 235–36 (6th Cir. 2006)).

Under the INA, an undocumented noncitizen who arrives at the border is deemed an "applicant for admission."  8 U.S.C. § 1225(a)(1).  Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)."  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  The first category, § 1225(b)(1), applies to "aliens arriving in the United States" and to "certain other aliens who have not been admitted or paroled."  8 U.S.C. § 1225(b)(1).  The term "arriving alien" means, inter alia, "an applicant for admission coming or attempting to come into the United States at a port-of-entry."  8 C.F.R. § 1.2.  Arriving aliens determined to be inadmissible under §§ 1182(a)(6)(C) or 1182(a)(7) are subject to expedited removal without further hearing or review unless they indicate an intent to apply for asylum, in

which case they are referred for an interview by an asylum officer.  8 U.S.C. §

1225(b)(1)(A)(i)–(ii).  The second category, § 1225(b)(2), is "a catchall provision that

applies to all applicants for admission not covered by § 1225(b)(1)."  *Jennings*, 583 U.S. at

287.  Applicants in this category are not subject to expedited removal but instead

advance to removal proceedings before an immigration judge.  8 U.S.C. § 1225(b)(2)(A);

*see id*. § 1229a.  Critically, under both § 1225(b)(1) and § 1225(b)(2), the applicant is

subject to mandatory detention pending expedited removal, final determination of an

asylum application, or removal proceedings under § 1229a, as applicable.  *Id*. §§

1225(b)(1)(B)(iii)(IV), 1225(b)(2)(A).

III.    **Analysis**

Petitioner raises two claims for relief under § 2241: (1) violation of the Fifth

Amendment right to substantive and procedural due process, and (2) violation of the

INA and the Administrative Procedure Act (APA).[3]  *Doc. 6* at 6–8.  Both claims are

based on his detention since September 8, 2025, without an individualized bond

hearing.  *See id*.; *doc. 1* at 6–7.  Petitioner asserts he is detained pursuant to § 1226(a),[4]

*doc. 6* at 5, and is therefore statutorily entitled to a bond hearing.  He requests an order

---

[3] Petitioner lists a request for attorney fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, as a third claim for relief.  *Doc. 6* at 8.  This is not properly considered as a freestanding claim and may only be awarded if Petitioner prevails on his claims.  The undersigned notes that "attorney fees are not available for pro se litigants under the EAJA."  *Demarest v. Manspeaker*, 948 F.2d 655, 655 (10th Cir. 1991).

[4] Petitioner actually alleges he "was placed in proceedings under 8 U.S.C. § 1226a," *doc. 6* at 5, which mandates detention of "suspected terrorists" and is not applicable to Petitioner's case.  The undersigned therefore assumes that he intended to reference § 1226(a).

for immediate release or, in the alternative, for a prompt bond hearing before an immigration judge. *Doc. 1* at 7; *doc. 6* at 9; *doc. 12* at 1. Respondents argue that Petitioner is detained under § 1225 and is neither statutorily nor constitutionally entitled to a bond hearing or release from detention.[5] *Doc. 11*.

    A.    <u>Petitioner is subject to mandatory detention under § 1225.</u>

Petitioner arrived at the Port of Entry on July 31, 2024, with no valid entry documents. *Doc. 11-1*. Therefore, at the time of his application for admission, Petitioner was an arriving alien subject to mandatory detention under § 1225(b)(1). He was subsequently paroled into the United States pending removal proceedings. *Id*. at 2. Under the INA, "[t]he Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States[.]" 8 U.S.C. § 1182(d)(5)(A). The law clearly states that this discretionary parole "shall not be regarded as an admission of the alien." *Id*. Furthermore,

> when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

---

[5] Respondents do not argue that Petitioner has failed to exhaust his administrative remedies. *See generally doc. 11*. Because the denial of Petitioner's claims is recommended on other grounds, the undersigned does not reach the question of administrative exhaustion.

*Id*.

Because Petitioner was subject to detention under § 1225 at the time of his discretionary parole on July 31, 2024, he remained subject to detention under § 1225 when he returned to DHS custody on September 8, 2025.[6]  *See, e.g.*, *Valeria-Marin v. Lyons*, Civ. No. 25-914 KG/GBW, 2025 U.S. Dist. LEXIS 263111, at *6 (D.N.M. Dec. 19, 2025) ("[Petitioner] was paroled under § 1182, but that discretionary parole was revoked, thus returning him to his previous status under § 1225 pending expedited removal.").  An applicant for admission who, like Petitioner, returns to custody after a period of discretionary parole "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).  Therefore, Petitioner was returned to his status under § 1225(b) when he was taken into custody.

This distinction is critical because § 1225, unlike § 1226, imposes mandatory detention with no requirement or provision for a bond hearing.  *Id*. §§ 1225(b)(1)(B)(iii)(IV), 1225(b)(2)(A); *Jennings*, 583 U.S. at 297 ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").  Additionally, the statutory text of § 1225 "imposes [no] limit on the length of detention." *Jennings*, 583 U.S. at 297.  The undersigned therefore concludes Petitioner is not entitled to either a

---

[6] Petitioner does not argue that the termination of his parole was deficient in any way.  *See generally docs*. *1, 6, 12*.

bond hearing or immediate release under the INA, and his detention complies with the text of the statute.

      B.      <u>Petitioner's detention does not support a claim for relief under the APA.</u>

Petitioner claims that the decision to detain him was "arbitrary and capricious" under the APA.  *Doc. 6* at 7–8; *see* 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."). As a general matter, courts

> will find an agency decision arbitrary or capricious when the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Adams v. FAA*, 168 F.4th 1271, 1282 (10th Cir. 2026) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Auto Ins. Co.*, 463 U.S. 29, 43 (1983)).  Detention without a bond hearing is mandatory under the applicable statute.  *See* 8 U.S.C. § 1225(b)(1); *Jennings*, 583 U.S. at 300 (apart from discretionary parole, "there are no *other* circumstances under which aliens detained under § 1225(b) may be released" (emphasis in original)).  To the extent that Petitioner challenges the decision to revoke his discretionary parole without "an[] individualized hearing as to whether the arrest was warranted," and "even [though]

nothing has changed in his proceedings since fi[l]ing his asylum and his last check-in,"[7]

*doc. 6* at 6–7, the Court lacks jurisdiction to consider the claim because parole under §

1182 is committed to the Secretary's discretion.  *See* 8 U.S.C. § 1252(a)(2)(B) ("[N]o court

shall have jurisdiction to review . . . any . . . decision or action of the Attorney General

or the Secretary of Homeland Security the authority for which is specified under this

title to be in the discretion of the Attorney General or the Secretary of Homeland

Security, other than the granting of relief under section 208(a).").  Even assuming,

arguendo, that jurisdiction exists, Petitioner fails to state a claim under the APA for the

same reason.  *See* 5 U.S.C. § 701(a) ("This chapter applies . . . except to the extent that . . .

agency action is committed to agency discretion by law.").  The undersigned therefore

recommends denial of the APA claim.

  C.  <u>Petitioner's detention does not violate the Fifth Amendment.</u>

  Petitioner claims a deprivation of his Fifth Amendment due process rights based

on his prolonged detention without a bond hearing.  "It is well established that the Fifth

Amendment entitles aliens to due process of law in deportation proceedings."  *Demore*

*v. Hyung Joon Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306

(1993)).  However, it is equally well established that "[i]n the exercise of its broad power

---

[7] Petitioner does not deny that his parole was revoked or challenge the procedural mechanism by which that revocation was accomplished, except to argue generally that he should have received an "individualized hearing" and opportunity to contest his arrest and detention, *doc. 6* at 7, which the law does not support.  The undersigned therefore does not consider these issues.  *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[L]iberal construction stops . . . at the point at which we begin to serve as [the pro se litigant's] advocate.").

over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521 (quoting *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976)).  In particular, "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 118 (2020) "[R]espondent . . . does not dispute that confinement during the pendency of expedited asylum review, and even during the additional proceedings he seeks, is lawful.  Nor could he.").

Neither the Supreme Court nor the Tenth Circuit Court of Appeals has explicitly addressed the constitutionally permissible length of detention under § 1225.  In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court defined a presumptively reasonable detention period of six months following a final order of removal under § 1231.  *See* 8 U.S.C. § 1231(a)(6) ("An alien ordered removed who is inadmissible under [§ 1182] . . . may be detained beyond the removal period[.]").  The Court held that § 1231 limits post-removal detention "to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689.  Although *Zadvydas* was decided on the text of § 1231, not by application of the Fifth Amendment, the Court noted that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *id.* at 690, and emphasized that the petitioners' post-removal confinement was "not limited, but potentially permanent," *id*. at 691.

9

In *Demore*, the Supreme Court considered whether the petitioner's mandatory detention under § 1226(c) violated his constitutional rights.  538 U.S. at 514.  Section 1226(c) mandates detention without bond during removal proceedings for noncitizens charged or convicted of certain criminal offenses.  *See* 8 U.S.C. § 1226(c)(1).  The Court distinguished *Zadvydas*, explaining that "[w]hile the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,' the detention here is of a much shorter duration."  *Demore*, 538 U.S. at 528 (quoting *Zadvydas*, 533 U.S. at 690–91).  Specifically, unlike post-removal detention, detention under § 1226(c) has a clear "termination point":

> *Zadvydas* distinguished the statutory provision it was there considering from § 1226 on those very grounds, noting that "a post-removal-period detention, *unlike detention pending a determination of removability . . .*, has no obvious termination point."

*Id*. (emphasis in original) (quoting *Zadvydas*, 533 U.S. at 697).  The Court held that the petitioner's detention without bond under § 1226(c) "for the limited period of his removal proceedings" was constitutional.  *Id*. at 531.

In an unpublished decision, the Tenth Circuit applied the same reasoning to the petitioner's detention without bond under § 1226(a).  *Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012).  Although § 1226(a), unlike § 1226(c), does not mandate detention, the immigration judge had denied the petitioner bond.  *Id*. at 786.  The Tenth Circuit rejected the petitioner's argument that his detention without bond violated his due

10

process rights under *Zadvydas* because it was "indefinite."  *Id*. at 787.  The Tenth Circuit

reasoned that, unlike in *Zadvydas*,

> Mr. Mwangi's removal remains reasonably foreseeable.  He is being
> detained 'pending a decision on whether he is to be removed from the
> United States."  8 U.S.C. § 1226(a); *see Zadvydas*, 533 U.S. at 697 ("post-
> removal-period detention, *unlike detention pending a determination of
> removability*[,] . . . has no obvious termination point" (emphasis added)).
> Although a precise end-date to his removal cannot be pinpointed, that is
> because his removal proceedings continue, not because the government
> cannot remove him.  Indeed, there is no indication that Mr. Mwangi is
> unremovable, whether it be for lack of a repatriation agreement or because
> his designated country will not accept him.  *C.f. Zadvydas*, 533 U.S. at 684–
> 86.

*Id*. (alterations in original).  Because the petitioner's detention was not "indefinite," he

was not entitled to relief.  *Id*. at 787–88.

For substantially the same reasons outlined in *Demore* and *Mwangi*, the

undersigned finds that Petitioner's mandatory detention under § 1225(b), pending the

final outcome of his removal proceedings, subsequent expedited removal, and/or a final

determination of his asylum application,[8] does not violate his Fifth Amendment right to

---

[8] The status of Petitioner's asylum application is not entirely clear.  Respondents seem to suggest that Petitioner applied for asylum for the first time during the removal proceedings.  *See doc. 11* at 2; 8 C.F.R. § 1208.4(b)(3)(1) (permitting asylum applications to be filed directly with the immigration court "[d]uring exclusion, deportation, or removal proceedings, with the Immigration Court having jurisdiction over the underlying proceeding").  If Petitioner's first and only application for asylum was filed with the immigration court, it will be effectively denied if the BIA affirms dismissal.  *See, e.g., Afr. Cmtys. Together v. Lyons*, 799 F. Supp. 3d 362, 376 n.7 (S.D.N.Y. 2025) ("Implicit in the rule is that the dismissal of a removal proceeding results in the dismissal of a defensive asylum application.  Thus, an oral motion to dismiss a removal proceeding, if granted, results in the dismissal of the accompanying defensive asylum application.").  On the other hand, Petitioner states that he applied for asylum with USCIS before being granted work authorization.  *Doc. 6* at 4–5.  If this is accurate, then § 1225(b) mandates detention pending a final determination of credible fear of persecution.  8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  Either way, Petitioner's detention will have a clear termination point.

due process.  Detention under § 1225, unlike post-removal detention, is not potentially "indefinite."  *C.f. Zadvydas*, 533 U.S. at 690.  There is no indication that DHS is unable or unwilling to effect Petitioner's removal as prescribed by the statute.  Therefore, it appears there is an "obvious termination point" to Petitioner's present detention.  *See Demore*, 538 U.S. at 529; *Mwangi*, 465 F. App'x at 787; *Valeria-Marin*, 2025 U.S. Dist. LEXIS 263111, at *7 (holding the petitioner's mandatory detention under § 1225(b) after revocation of discretionary parole remained "lawful" because his "removal order is not final").  The Fifth Amendment does not require Petitioner's release or an individualized bond hearing, and the undersigned recommends that the petition be denied.

## IV.     Conclusion

For the foregoing reasons, I find no basis for relief under § 2241 and therefore RECOMMEND that the Petition be DENIED and this action DISMISSED WITH PREJUDICE.

_____

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**